IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**MARY S.,**

 **Plaintiff,**

vs.              **CIVIL ACTION NO. 2:23-CV-00302**

**KILOLO KIJAKAZI,
ACTING COMMISSIONER
OF SOCIAL SECURITY,**

 **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

  This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered April 4, 2023 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of her claim and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 10, 11)

  Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 10), **DENY** the Defendant's request to affirm the decision of the Commissioner (ECF No. 11); **REVERSE** the final decision of the Commissioner; and **REMAND**

this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on June 16, 2020 alleging her disability began August 3, 2019 due to heart disease, hypothyroidism, COPD, rheumatoid arthritis, osteoarthritis, urinary incontinence, hip replacement, depression, anxiety, and sleep apnea. (Tr. at 88, 156) Her claim was initially denied on September 30, 2020 and upon reconsideration on January 14, 2021. (Tr. at 88, 188-198, 200-206) Thereafter, the Plaintiff filed a written request for hearing on February 5, 2021. (Tr. at 207-208)

An administrative hearing was held on March 24, 2022 before the Honorable Francine Serafin, Administrative Law Judge ("ALJ"). (Tr. at 110-130) On June 29, 2022, the ALJ entered an unfavorable decision. (Tr. at 84-109) On February 8, 2023, the Appeals Council denied the Plaintiff's Request for Review, thus the ALJ's decision became the final decision of the Acting Commissioner. (Tr. at 1-7)

On April 3, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 7) Subsequently, the Plaintiff filed a Brief in support of her complaint (ECF No. 10); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 11), to which the Plaintiff filed her Reply Brief (ECF No. 12). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 53 years old as of the alleged onset date, and considered a "person closely approaching advanced age", though she transitioned to a "person of advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(d), (e). (Tr. at 155) For the last fifteen years before applying for benefits, she worked as a hospital admitting clerk, which the Plaintiff performed as a mixture of sedentary to light level exertion. (Tr. at 124-125)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The

burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

> Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in

> reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2022. (Tr. at 91, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of August 3, 2019. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD); history of myocardial infarction with angina; paroxysmal atrial fibrillation (AFIB); osteoarthritis (OA); osteopenia; rheumatoid arthritis; status post left hip replacement surgery; and peripheral arterial disease. (Id., Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 93, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except she can perform:

> Standing and walking 4 of 8 hours in an 8-hour workday and sitting for 6 of 8 hours in an 8-hour workday. She is capable of occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; and occasional balancing, stooping, kneeling, crouching, and crawling. She is capable of tolerating occasional exposure to extreme cold, extreme heat, wetness, humidity, atmospheric conditions as that term is defined in the Selected Characteristics of Occupations ("SCO"), vibration and workplace hazards such as moving machinery and unprotected heights. She may require the use of a cane on occasion in order to ambulate.

(Tr. at 95, Finding No. 5)

At step four, the ALJ found the Plaintiff remained capable of performing her past relevant work as a hospital admitting clerk. (Tr. at 102, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability since August 3, 2019 through the date of the decision. (Tr. at 103, Finding No. 7)

**The Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff alleges the ALJ's fourth step finding is not supported by substantial evidence because it relies upon the vocational expert's (VE) testimony for an employer accommodation for her cane use which is contrary to legal authorities. (ECF No. 10 at 3-6) Additionally, the Plaintiff argues that that ALJ's RFC assessment fails to account for her mental limitations or explain why they were not included. (Id. at 6-8) The Plaintiff also alleges that the ALJ failed to comply with Dowling v. Comm'r of SSA, 986 F.3d 377 (4th Cir. 2021) because she only referenced Section 404.1545 and Social Security Ruling (SSR) 96-8p in a boilerplate introductory section of the written decision, indicating a reliance on an incorrect regulatory framework. (Id. at 8-9) The Plaintiff contends that the ALJ failed to account for her mild limitations in the functional area of concentrating, persisting, or maintaining pace in the RFC; the ALJ also failed to explain why those limitations were excluded from the RFC assessment. (Id. at 9-14) Because of these errors, the Plaintiff asks the Court to remand this matter for further administrative proceedings. (Id. at 14-15)

In response, the Commissioner contends that the medical evidence and the Plaintiff's own statements did not warrant her mild limitations in the broad areas of mental functioning in her RFC and the ALJ explained why in her decision. (ECF No. 11 at 7-10) The Commissioner argues that the facts in Dowling are critically distinguishable from the case here, and further, the Plaintiff's contention that the Fourth Circuit held that an ALJ must cite the regulations governing RFC

7

analysis is incorrect. (Id. at 11) The Commissioner contends that the ALJ here assessed the Plaintiff's RFC under the proper regulatory framework and also appropriately considered the Plaintiff's symptoms in determining the RFC. (Id. at 11-12)

Regarding the ALJ's reliance on the VE's testimony, the Commissioner argues that the ALJ need only include the Plaintiff's credibly established limitations in the RFC and did so in this case. (Id. at 12-13) The ALJ solicited an explanation from the VE, who testified that the hypothetical individual could perform the Plaintiff's past relevant work as generally performed, but not as she performed it. (Id. at 13-14) The Commissioner notes that the Plaintiff's representative did not inquire any further of the VE about this issue, thus there is no ambiguity left to resolve regarding the ALJ's hypothetical question to the VE and the responses. (Id. at 14) Further, the Commissioner points out that the Plaintiff does not challenge the RFC finding or that there is any conflict between the requirements of her past relevant work as described in the Dictionary of Occupational Titles and the RFC, which shows that substantial evidence supports the RFC and the ALJ's determination that the Plaintiff could still perform her past relevant work as generally performed. (Id.)

The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (Id. at 15)

In her reply brief, the Plaintiff reasserts that the ALJ's reliance on the VE's testimony regarding her cane use is vague to the extent that "it would probably depend on the employer" could not mean only the Plaintiff's past employer, and such vague testimony does not provide substantial evidence in support of the ALJ's decision. (ECF No. 12 at 1-2) Further, because the ALJ did not consider the nature of the Plaintiff's past work, she did not consider the number of

employers that would even provide a reasonable accommodation for the Plaintiff's cane use, which undermines the ALJ's decision to deny her benefits. (Id. at 2-3) The Plaintiff concedes that mild paragraph B findings is not necessarily required in the RFC assessment, but asserts that because the ALJ found mild limitations in the paragraph B criteria, her omitting them from the RFC is error, or she should have explained why they were excluded – especially considering the Plaintiff was determined capable of performing past skilled work; thus, remand is warranted. (Id. at 3-6)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

The ALJ noted that the Plaintiff did not receive treatment from a mental health professional, but was prescribed Zoloft from her rheumatologist to manage her symptoms of anxiety, depression, and sleep disturbance. (Tr. at 91, 570, 645) Examinations consistently revealed normal mood and affect (Tr. at 91, 408, 456) and the Plaintiff has not required any emergency treatment or hospitalization for treatment of her mental impairments (Tr. at 91-92). Because the evidence regarding the Plaintiff's mental impairments did not cause more than a minimal limitation of her ability to perform basic mental work activities, the ALJ found them non-severe. (Tr. at 92)

**Plaintiff's Function Reports:**

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. Therefore, for purposes of this Proposed Findings and Recommendation, the focus is on the Plaintiff's mild limitations in concentrating, persisting, or maintaining pace and the effects from her cane use at the fourth step of the sequential evaluation process.

As part of her disability application, the Plaintiff completed two Adult Function Reports describing her subjective symptoms (Tr. at 335-342, 357-364). She reported having difficulty with concentration, but she admitted she could pay attention for up to one to three hours at a time, could prepare meals, shop for groceries, watch television, pay bills, count change, handle a savings account, and use a checkbook/money order (Tr. at 93, 337-338, 359-360).

**Prior Administrative Medical Findings:**

Jeff Boggess, Ph.D., a state agency psychological consultant, reviewed the records concerning the Plaintiff's mental impairments on September 29, 2020, and found there was insufficient evidence to assess her conditions due to failure to cooperate (Tr. at 92, 155-163). On January 14, 2021, state agency psychologist Timothy Saar, Ph.D., reviewed the Plaintiff's medical records and opined she had no severe mental impairment (Tr. at 92, 165-181).

**The Administrative Hearing:**

<u>The Plaintiff's Testimony:</u>

The Plaintiff testified that the main issue that prevents her from working is that she is "physically and mentally exhausted." (Tr. at 115) She said she was in a lot of pain and experienced increased anxiety when working. (Id.) She testified that she uses a cane "all the time" because of pain and falls, and when she has a flare-up she uses her walker. (Id.) The Plaintiff also testified that her depression causes her difficulties with concentrating, and staying on task. (Tr. at 121)

<u>The Vocational Expert's (VE) Testimony:</u>

The VE characterized the Plaintiff's past work as a hospital admitting clerk (DICOT 205.362-018) as skilled and sedentary, but based on the Plaintiff's testimony she performed this job at "a mixture of sedentary to light." (Tr. at 124-125) The ALJ posed several hypothetical

scenarios including all of the Plaintiff's limitations as outlined in her RFC finding, and the VE responded that the hypothetical individual would be capable of performing the Plaintiff's past work as a hospital admitting clerk as generally performed (Tr. at 127).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**[2]

The RFC determination is the "ability to do sustained work-related physical and mental

---

[2] The undersigned addresses the Plaintiff's arguments in reverse order because it is more practical to do so given the specific assignments of error raised in this appeal.

11

activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See Id. § 404.1546(c); see also Id. § 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute that the ALJ found the Plaintiff had mild limitations in concentrating, persisting or maintaining pace, based on her Functional Reports, *supra*.[3] (Tr. at 93) Of significance to the case at bar is that both parties find pertinent case law to support their respective arguments as they relate to the lack of mental limitations in the ALJ's RFC determination – most of this jurisprudence comes from this very Court, suggesting a split within this District, though each case is factually nuanced to varying degrees. For instance, in *Shank v. Saul*, No. 3:20-cv-00444, 2021 WL 2467063 (S.D.W. Va. Jun. 11, 2021)(Eifert, M.J.), *report and recommendation adopted*, 2021

---

[3] This area of mental functioning refers to:

> the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00E(3). A "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." Id. § 12.00F(2)(b).

The ALJ in this case found the Plaintiff had mild limitations in all four areas of mental functioning. (Tr. at 92-93)

12

WL 2744550 (S.D.W. Va. Jul. 1, 2021)(Chambers, J.), the claimant presented with primarily physical impairments, and was found to have nonsevere mental impairments, just like the Plaintiff here. In *Shank*, the Court observed that the ALJ used the same language in the written decision at step 2 as the undersigned noted *supra*. Ultimately, the Court found substantial evidence did not support the RFC assessment, because the ALJ did not "provide any insight into why he did not assess any mental RFC restriction. Rather, the RFC assessment focuses almost exclusively on Claimant's physical impairments." Id.[4] That is precisely what happened in this case.

However, in another matter brought before this Court, *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021)(Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021)(Copenhaver, J.), the ALJ therein found the claimant had only mild limitations in all four broad categories of mental functioning, and also did not include any of those limitations in the RFC assessment.[5] Id. at *8. In that case, while the ALJ did not address the claimant's mental impairments or their resulting limitations any further beyond step 2, the Court found substantial evidence supported the RFC assessment, having observed that the ALJ "expressly stated that Claimant did not have 'any work-related mental

---

[4] The Court noted further: "The boilerplate statement that the RFC assessment reflects the degree of limitation that the ALJ found in the 'paragraph B' mental function analysis is an insufficient substitute for substantive analysis, and it does not provide the level of articulation necessary for meaningful review." Id. at *9.

The Plaintiff has pointed out that this situation presented itself again in another case before the Court in *Jones v. Kijakazi*, No. 5:21-cv-00634, (S.D.W. Va. Sept. 22, 2022)(Eifert, M.J.), ECF No. 18, *report and recommendation adopted*, (S.D.W. Va. Nov. 28, 2022)(Volk, J.), ECF No. 19 (following *Shank* and remanding when the ALJ found mild limitations in two of the "paragraph B" criteria but then failed to mention his mental limitations after step 2). (ECF No. 10 at 10-13)

[5] Notably, Mr. Wall had been treated for his mental health issues with a psychiatrist, and received a consultative psychological examination as it related to his claim for benefits.

13

limitations.' " Id.[6]

There is no question that the ALJ in this case did not mention or address any of the Plaintiff's mental limitations after step 2. Interestingly, the ALJ found the state agency psychological consultant's (Dr. Saar) opinion at the reconsideration level of review persuasive, who determined the Plaintiff had *no* limitations whatsoever in all four broad areas of mental functioning. (Tr. at 174) It begs the question why, despite finding just mild limitations in all four areas of mental functioning, they were omitted from the RFC – or why the ALJ failed to explain they were unnecessary in the RFC determination? From the undersigned's review of this matter, in light of the rulings of other Courts within this District in cases that presented the same situation as the one presented here, the undersigned is compelled to find the same.[7] Just like in *Shank* and *Jones*, the ALJ here did not go beyond affixing the boilerplate concerning "paragraph B" criteria: while the ALJ acknowledged the mild limitations did not constitute an RFC assessment, but would "require a more detailed assessment" used at subsequent steps in the sequential evaluation process, the ALJ never followed through on this. Further, there is no explicit or express finding by the ALJ in this case that the Plaintiff's mild limitations did not result in *any* work-related limitations. See

---

[6] In another matter before this Court, substantial evidence supported an RFC assessment that failed to include any of the mild limitations found in the four broad areas of mental functioning, however, the ALJ therein addressed the minimal findings of both providers and the opinion evidence, noting they did not preclude any further work-related restrictions. *Hunt v. Kijakazi*, No. 1:21-cv-00265, 2021 WL 9076248, at *10 (S.D.W. Va. Dec. 9, 2021)(Eifert, M.J.), *report and recommendation adopted*, 2022 WL 2719968 (S.D.W. Va. Jul. 13, 2022)(Faber, J.). The Court applied the same rationale in finding an RFC assessment that did not include any of the mild limitations in each of the four areas of functioning in *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D.W. Va. May 21, 2021)(Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230987 (S.D.W. Va. Nov. 9, 2021)(Copenhaver, J.). In *Hedrick*, the claimant, like the Plaintiff herein, did not receive any specialized mental health treatment during the period under review. However, in both *Hunt* and *Hedrick*, the undersigned notes that the ALJ continued the review of the claimants' mental impairments beyond the second step of the sequential evaluation process.

[7] See also, *Karen W. v. Kijakazi*, No. 2:23-cv-00044 (S.D.W. Va. Jul. 31, 2023).

*Wall*, *supra*. Although the ALJ provided an adequate explanation for why the Plaintiff has mild limitations in all four areas of mental functioning, there is no explanation why they were excluded from the RFC assessment, resulting in the undersigned having to speculate why, thus frustrating meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the RFC analysis is not supported by substantial evidence, as it lacks any explanation for omitting the Plaintiff's mild mental limitations as set forth in step 2.

As set forth above, because the RFC analysis is flawed, the controlling hypothetical posed to the VE is likewise flawed, resulting in a fourth step finding that is not supported by the substantial evidence; this is to the extent that it omits a mental component or at least is prefaced by a reasonable explanation why same was omitted. Accordingly, the undersigned declines to address the matters surrounding the Plaintiff's cane use.

Based on the foregoing, the undersigned **FINDS** the final decision of the Commissioner is not supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **GRANT** the Plaintiff's request for remand (ECF No. 10), **DENY** the Defendant's request to affirm the decision (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated herein.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 24, 2023.



Omar J. Aboulhosn
United States Magistrate Judge